UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
G&G CLOSED CIRCUIT EVENTS, LLC,

                Plaintiff,                REPORT AND
                                                           RECOMMENDATION
   -against-                             21 CV 5005 (RPK)(RML)

FERNANDO QUINTANA, individually and d/b/a
Nutty Sports Bar & Grill; and FQ BAR & GRILL
LLC, an unknown business entity d/b/a
Nutty Sports Bar & Grill,

                Defendants.
------------------------------------------------------------X
LEVY, United States Magistrate Judge:

        By order dated January 21, 2022, the Honorable Rachel P. Kovner, United States District Judge, referred plaintiff's motion for default judgment to me for report and recommendation. For the reasons explained below, I respectfully recommend that plaintiff's motion for default judgment be granted with respect to defendant FQ Bar & Grill LLC d/b/a Nutty Sports Bar & Grill (the "Establishment" or "Nutty Sports Bar & Grill") and denied with respect to defendant Fernando Quintana ("Quintana"). I further recommend that plaintiff be awarded $2,088.10 in damages, plus post-judgment interest at the federal statutory rate. Additionally, I recommend that plaintiff be permitted to move for attorney's fees and costs.

**BACKGROUND AND FACTS**

        Plaintiff G&G Closed Circuit Events, LLC ("plaintiff") brought this action on September 7, 2021, alleging violations of the Federal Communications Act of 1934 (the "FCA"), codified as amended, 47 U.S.C. §§ 553 and 605, and seeking statutory damages, enhanced damages, pre- and post-judgment interest, attorney's fees, and costs. (See Complaint, dated Sept. 7, 2020 ("Compl."), Dkt. No. 1.) Defendants Nutty Sports Bar & Grill and Quintana were

properly served on September 14, 2021 and September 30, 2021, respectively. (Affidavit of Service of Mark McClosky, sworn to Sept. 14, 2021, Dkt. No. 5; Affidavit of Service of Roberto Urena, sworn to Sept. 30, 2021, Dkt. No. 6.) On December 8, 2021, the Clerk of the Court noted defendants' default pursuant to Federal Rule of Civil Procedure 55(a). (Clerk's Entry of Default, dated Dec. 8, 2021, Dkt. No. 8.) On January 20, 2022, plaintiff moved for default judgment against both defendants. (Motion for Default Judgment, dated Jan. 20, 2022, Dkt. No. 10.) Judge Kovner referred plaintiff's motion to me. (Order Referring Motion, dated Jan. 21, 2022.) To date, despite being properly served, the court has received no communication from defendants.

Plaintiff is a California corporation that entered into a licensing agreement with Perform Investment Limited and "was granted the exclusive nationwide commercial distribution (closed-circuit) rights" to the May 4, 2019 telecast of the "Saul Alvarez v Daniel Jacobs, WBA/WBC/IBF Middleweight Championship Fight Program" (the "Program"). (Compl. ¶¶ 6, 19.) This agreement allowed plaintiff to enter into nationwide sublicensing agreements with various commercial establishments, such as "theaters, arenas, bars, clubs, lounges, restaurants and the like" by which it granted those establishments the rights to exhibit the Program, including both the main event and any "undercard or preliminary bouts." (Id. ¶¶ 19-20.) Plaintiff granted commercial establishments authorization to broadcast the Program for a fee. (Id. ¶ 22.) Establishments that entered into these agreements with plaintiff were provided necessary decoding equipment to receive the encrypted signal. (Affidavit of Nicolas J. Gagliardi, sworn to Jan. 20, 2021 ("Gagliardi Aff."), Dkt. No. 10-2, ¶ 11.) For establishments with a maximum capacity of fifty patrons, such as Nutty Sports Bar & Grill, the sublicensing fee was $875. (See id. ¶ 8, Ex. 2; Compl. ¶ 28.)

Nutty Sports Bar & Grill is a commercial establishment in Richmond Hill, New York.  (Compl. ¶¶ 7-9, 13.)  Quintana is the sole individual identified on the On Premises Liquor License for FQ Bar & Grill LLC, where he is listed as "Principal."  (Id. ¶¶ 10, 11, 13.)  Neither Nutty Sports Bar & Grill, nor Quintana individually, was contractually authorized by plaintiff to broadcast the Program.  (Gagliardi Aff. ¶ 3.)  However, an auditor hired by plaintiff entered the Establishment on the date in question and observed five television sets showing the Program with fifteen to nineteen patrons present.  (Affidavit of James M. Emery Jr., sworn to May 15, 2019 ("Emery Aff."),[1] attached as Ex. 5 to the Declaration of Joseph P. Loughlin, Esq. in Support of Application for Default Judgment, dated Jan. 20, 2022, Dkt. No. 10-3.)  The auditor reported that he did not have to pay a cover charge to enter the Establishment.  (See Emery Aff.)

Plaintiff contends that its programming "cannot be mistakenly, innocently or accidentally intercepted."  (Gagliardi Aff. ¶ 9.)  Thus, plaintiff maintains, the only means by which the Program could have been shown at the Establishment was if defendants unlawfully intercepted it by one of various methods.  (See id. ¶ 10.)  Pursuant to § 605 of the FCA, plaintiff seeks $2,625 in statutory damages and $7,875 in enhanced statutory damages.  (Plaintiff's Memorandum of Law in Support of Application for Default Judgment, dated Jan. 20, 2022 ("Pl.'s Mem."), Dkt. No. 10-1.)

## DISCUSSION

### A. Legal Standards

#### 1. Default Judgment

A defendant's default "is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155,

---

[1] The affidavit of James M. Emery Jr. does not contain paragraph numbers.

3

158 (2d Cir. 1992). Once a default is entered, the court "is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether [plaintiff's] allegations establish [defendants'] liability as a matter of law." Id. If liability has been established, motions for default judgment are "left to the sound discretion of [the] district court . . . ." Shah v. N.Y. Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999) (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)). The plaintiff may establish damages in an evidentiary hearing, but the court can make such a determination without a hearing when supported by sufficiently detailed affidavits and documentary evidence. See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

    2. The Federal Communications Act of 1934

Plaintiff asserts claims pursuant to sections 605 and 553 of the FCA. However, as plaintiff correctly notes, "the law in this Circuit is clear that a plaintiff may recover only under one of the statutes." Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc., 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011) (collecting cases). Because plaintiff is entitled to default judgment under section 605, which "allows for a greater recovery than does [section] 553," plaintiff's claims under section 553 will not be addressed. Id. (citing J & J Sports Prods., Inc. v. Alvarez, No. 07 CV 8852, 2009 WL 3096074, at *4 (S.D.N.Y. Sept. 25, 2009)).

Section 605(a) of the FCA provides, in relevant part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person." 47 U.S.C. § 605(a). The Second Circuit has applied section 605 to theft of cable communications. Cmty. Television Sys.,

4

Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002).  If a plaintiff successfully alleges that an establishment violated section 605, it may seek to impose liability against individual defendants under theories of vicarious liability or contributory infringement.  See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F. 3d 955, 971 (2d Cir. 1997).  To establish vicarious liability, a plaintiff must show that the defendant had a "right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials." Id. (alterations omitted) (quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)).  To establish contributory infringement, a plaintiff must show that the defendant "authorized the infringing use."  Id.  (alteration omitted) (quoting Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 437 (1984)).

    **B. Liability**

        1. Nutty Sports Bar & Grill

Plaintiff's factual allegations establish Nutty Sports Bar & Grill's liability under section 605(a) of the FCA.  Plaintiff held exclusive closed-circuit distribution rights to the Program.  (Compl. ¶ 19.)  Nutty Sports Bar & Grill showed the Program on May 4, 2019, even though it did not enter into a sublicensing agreement with plaintiff authorizing it to do so.  (See Emery Aff.; Gagliardi Aff. ¶ 3.)  "Courts in this jurisdiction have consistently found that such allegations are sufficient to establish liability under Section 605(a)." J & J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15 CV 6505, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (collecting cases).  Accordingly, I respectfully recommend that plaintiff's motion for default judgment be granted with respect to Nutty Sports Bar & Grill.

2. Quintana

Plaintiff also seeks to hold Quintana liable under section 605(a) in his capacity as owner and principal of Nutty Sports Bar & Grill.  (Compl. ¶¶ 8, 9.)  Plaintiff alleges that Quintana is both vicariously and contributorily liable.

With respect to vicarious liability, plaintiff first alleges that because Quintana's name was listed on FQ Bar & Grill LLC's liquor license, Quintana had the right and ability to supervise the activities of Nutty Sports Bar & Grill, including the unlawful interception, receipt and publication of the Program.  (See Compl. ¶¶ 12, 13.)  Second, plaintiff alleges that Quintana had an "obvious and direct financial interest" in the unlawful interception, receipt and publication of the Program, which resulted in increased profits or financial benefit to Nutty Sports Bar & Grill.  (See id. ¶¶ 15, 16.)

In recent years, courts in this district have disagreed on whether a liquor license is enough to establish the first part of the vicarious liability standard – that the defendant had a right and ability to supervise the establishment's actions.  J & J Sports Prods., Inc. v. Gonzalez, No. 18 CV 2319, 2019 WL 3716197, at *6 (E.D.N.Y. May 9, 2019) (collecting cases), report and recommendation adopted, 2019 WL 4888635 (E.D.N.Y. Sept. 30, 2019).  However, I need not make a determination on the adequacy of the liquor license in establishing the above, because I find that plaintiff's allegations fail to establish the second part of the vicarious liability standard – that the defendant had an obvious and direct financial interest.  See id. (finding that "this Court need not reach a conclusion on the first prong, as Plaintiff's allegations ultimately fail on the second prong –namely, an obvious and direct financial interest"); see also J & J Sports Prods., Inc. v. Dominguez, No. 19 CV 5110, 2020 WL 6434735, at *3 (E.D.N.Y. Sept. 16, 2020), report and recommendation adopted, 2020 WL 6400700 (E.D.N.Y. Nov. 1, 2020); J & J Sports Prods.,

Inc. v. Crazy Willy's Bar, Lounge & Rest., Inc., No. 17 CV 1192, 2018 WL 3742701, at *3 (E.D.N.Y. June 28, 2018), report and recommendation adopted, 2018 WL 3629595 (July 31, 2018).

To establish an obvious and direct financial interest, courts in the Second Circuit look to whether the plaintiff "made a strong[] showing of financial gain." LX Food Grocery, 2016 WL 6905946, at *3. Courts consider whether the plaintiff demonstrated direct financial gain, such as an admission fee or cover charge on the night of the broadcast, or indirect evidence of financial gain, such as a large number of patrons inside the establishment. See id. Here, plaintiff's auditor did not pay an admission fee or cover charge, and plaintiff does not allege that defendants imposed a cover charge or a surcharge on its goods during the Program. (See generally Emery Aff.; Compl.) Plaintiff also does not allege that the patrons made any purchases or that the Establishment did more business than usual on the night of the Program. (See generally Emery Aff.; Compl.); J & J Sports Prods., Inc. v. Nest Rest. & Bar Inc., No. 17 CV 4107, 2018 WL 4179452, at *4 (E.D.N.Y. Aug. 31, 2018) (finding no financial interest where establishment had thirty-five patrons in attendance and auditor reported no cover charge); Crazy Willy's Bar, Lounge & Rest., Inc., 2018 WL 3742701, at *4 (finding no financial interest where establishment had twenty-five patrons present and there was no cover charge). Therefore, I find that plaintiff has not established that Quintana had an obvious and direct financial interest in the alleged unlawful interception, receipt and publication of the Program. See Dominguez, 2020 WL 6434735, at *3; Nest Rest. & Bar Inc., 2018 WL 4179452, at *4; Crazy Willy's Bar, Lounge & Rest., Inc., 2018 WL 3742701, at *4; Compare J & J Sports Prods., Inc. v. McAdam, No. 14 CV 5461, 2015 WL 8483362 (E.D.N.Y. Dec. 9, 2015) (finding a financial interest where establishment had 100 patrons present and a $20 cover charge), with J & J Sports Prods., Inc. v.

Classico Bar Inc., No. 16 CV 5639, 2018 WL 1168582, at *4 (E.D.N.Y. Mar. 6, 2018) (finding no financial interest where establishment had twenty-five patrons present and no cover charge), and J & J Sports Prods., Inc. v. Guncay, No. 18 CV 2097, 2018 WL 6313210, at *3 (E.D.N.Y. Oct. 17, 2018) (finding a financial interest where establishment had eighty patrons present and a $20 cover charge), report and recommendation adopted, 2018 WL 6308773 (E.D.N.Y. Dec. 03, 2018).  Thus, I conclude that Quintana is not vicariously liable.

Turning next to plaintiff's theory of contributory liability, plaintiff solely alleges, based on information and belief, that Quintana "specifically directed the employees of Nutty Sports Bar & Grill" to unlawfully intercept, receive and broadcast the Program, or that Quintana intercepted the Program himself.  (Compl. ¶ 14.)  This "formulaic recitation of the elements of a cause of action is insufficient to establish a prima facie case" against Quintana for contributory infringement.  Gonzalez, 2019 WL 3716197, at *6 (holding that it would be "illogical for the Court to accept that merely because of [Defendant's] corporate officer status [he] acted to authorize alleged infringement of the Program"); J & J Sports Prods., Inc. v. Orellana, No. 18 CV 2052, 2019 WL 1177719, at *4 (E.D.N.Y. Mar. 13, 2019) (finding the individual defendant was not liable where the plaintiff only alleged liability based on the defendant being listed as the owner or principal on the establishment's liquor license).  Therefore, I find that plaintiff has also not established contributory liability, and I respectfully recommend that plaintiff's motion for default judgment be denied as to Quintana.

**C. Damages**

1. Statutory Damages

Section 605(e)(C)(i)(II) of the FCA provides for a per-violation recovery "in a sum of not less than $1,000 or more than $10,000, as the court considers just."  47 U.S.C. §

8

605(e)(C)(i)(II).  The amount of damages to be awarded lies in the discretion of the court.  See, e.g., LX Food Grocery, 2016 WL 6905946, at *4 (citing Time Warner Cable of N.Y.C. v. Sanchez, No. 02 CV 5855, 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003)).  Courts in the Second Circuit typically use either the "flat-fee" method or the "per-person" method to determine statutory damages under Section 605(e)(C)(i)(II).  See, e.g., J & J Sports Prods., Inc. v. Monte Limar Sports Bar, No. 15 CV 3771, 2017 WL 933079, at *4 (E.D.N.Y. Mar. 8, 2017).  The "flat-fee" method considers the amount that the defendant would have paid for authorization to broadcast the Program.  See id.  Under the per-person method, damages are equal to the amount the patrons would have collectively paid to view the Program in their homes.  See id.  "[T]he higher of the two amounts is generally awarded."  Id.

Plaintiff requests statutory damages of $2,625, or three times the amount that Nutty Sports Bar & Grill would have paid to lawfully broadcast the Program.  (See Pl.'s Mem. at 5, 8.)  Plaintiff contends that neither of the two typical methods of calculating damages should be used in this case and that the court should instead award a higher amount, which it claims will result in more adequate compensation and more effective deterrence of future violations.  Id. at 5-8 (citing J & J Sports Prods., Inc. v. Tonita Rest., LLC, No. 5:13 CV 382, 2015 WL 9462975, at *5, n.8 (E.D. Ky. Dec. 28, 2015); Joe Hand Promotions, Inc. v. Sheedy, No. 4:08 CV 1797, 2011 WL 4089534 (D.S.C. July 29, 2011)).  Additionally, plaintiff states that as this is a default case, they cannot calculate the defendant's profits, but there is a reasonable presumption that defendants did profit.  (Pl.'s Mem. at 7-8.)

However, I respectfully recommend that the court apply the methodology typically used to calculate statutory damages in the Second Circuit.  Here, the auditor did not pay a cover charge to enter Nutty Sports Bar & Grill and counted approximately fifteen to nineteen

patrons in the Establishment. (Emery Aff.) Plaintiff has not provided an approximate cost for a residential customer to view the Program at home. When a per-person valuation is not provided, courts in this district assume a $54.95 residential fee. See McAdam, 2015 WL 8483362, at *4 (collecting cases). Accepting the higher number of patrons, multiplying the $54.95 residential fee by nineteen results in an award of $1,044.05. The broadcasting fee that defendants would have paid to legally broadcast the Program was only $875. (Gagliardi Aff. ¶ 8.) Since the $875 licensing fee is less than $1,044.05 and is below the statutory minimum of $1000, the per-person method is the appropriate method to calculate plaintiff's damages award. Accordingly, I respectfully recommend that plaintiff be awarded $1,044.05 in statutory damages.

    2. Enhanced Damages

Section 605(e)(3)(C)(ii) of the FCA permits the court, in its discretion, to enhance the award of damages up to $100,000 when it finds a violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain . . . ." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff requests enhanced damages in the amount of $7,875, a three times multiplier of the statutory damages award requested. (Pl.'s Mem. at 5.)

Willfulness is described as a "disregard for the governing statute and an indifference for its requirements." Garden City Boxing Club, Inc. v. Extasis Corp., No. 07 CV 3853, 2008 WL 3049905 at *7 (E.D.N.Y. Aug. 1, 2008) (quoting J & J Sports Prods. v. Echeverria, No. 06 CV 2894, 2007 WL 1160423, at *3 (E.D.N.Y. Mar. 16, 2007)). Here, the fact that Nutty Sports Bar & Grill broadcast the Program without authorization establishes the willfulness of its conduct. J & J Sports Prods., Inc. v. Taqueria Juarez Rest Inc., No. 17 CV 4158, 2018 WL 2056181, at * 6 (E.D.N.Y. Mar. 16, 2018) ("[d]efendant could not have involuntarily intercepted and exhibited the Event given that the transmission had to be decoded

with electronic decoding equipment in order for the signal to be received and displayed"), report and recommendation adopted, 2018 WL 2048370 (E.D.N.Y. May 2, 2018); Time Warner Cable of N.Y.C. v. Googie's Luncheonette, Inc., 77 F. Sup. 2d, 485, 487 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously").

Courts consider multiple factors to determine whether a willful violation warrants the imposition of enhanced damages including evidence of (1) repeated violations; (2) significant actual damages suffered by the plaintiff; (3) substantial unlawful monetary gains by defendant; (4) defendant's advertising of the event; and (5) defendant's collection of a cover charge or premiums for food and drinks. J & J Sports Prods., Inc. v. Chulitas Enter. Corp., 12 CV 3177, 2014 WL 917262, at *5 (E.D.N.Y. Mar. 10, 2014) (quoting J & J Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010)), report and recommendation adopted, 2010 WL 3523003 (E.D.N.Y. Sept. 2, 2010). Additionally, a plaintiff's claim of damage to its reputation and loss of goodwill can be considered to support an award of enhanced damages. J&J Sports Prods., Inc. v. Potions Bar & Lounge, Inc., No. 08 CV 1825, 2009 WL 763624, at *8 (E.D.N.Y. Mar. 23, 2009).

In this case, there is no evidence of previous violations by defendants. With regard to actual damages, the loss sustained by the plaintiff is the $875 fee it would have received had Nutty Sports Bar & Grill obtained the legal rights to broadcast the Program. (Gagliardi Aff. ¶ 8.) Plaintiff has provided no evidence of the Establishment's monetary gains or that the Establishment advertised the event. Additionally, the Establishment did not collect a cover charge, and there is no evidence that the Establishment charged premiums for food or drinks. (See Emery Aff.)

Although none of the five factors weigh in favor of awarding enhanced damages, courts in this district have awarded enhanced damages "as a deterrent to the problem of 'persistent signal piracy' and to compensate Plaintiff for intangible losses such as business investment, business opportunities, reputation, and goodwill." Dominguez, 2020 WL 6434735, at *6 (quoting J & J Sports Prods., Inc. v. GPN Bar Inc., No. 15 CV 6504, 2016 WL 8139019, at *6 (E.D.N.Y. Dec. 15, 2016)), report and recommendation adopted, 2017 WL 435785 (E.D.N.Y. Feb. 1, 2017). Courts in this district have taken varying approaches in determining the amount of enhanced damages to award, with some courts awarding an amount two or three times the statutory damages and others an amount equal to the statutory damages. See J & J Sports Prods., Inc. v. Afrikan Poetry Theater Inc., 17 CV 2196, 2018 WL 2078482, at *7-8 (E.D.N.Y. Feb. 27, 2018) (collecting cases), report and recommendation adopted, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018). Because defendant willfully and affirmatively violated the statute by intercepting the Program, but none of the five aforementioned factors applies, I find it appropriate to award enhanced damages of $1,044.05, which is equal to the amount of the recommended statutory damages award, for a total award of $2,088.10. See Dominguez, 2020 WL 6434735, at *6 (finding that since none of the five factors militated in favor of awarding enhanced damages, an award of enhanced damages in the amount equal to the recommended statutory damages was appropriate); see also J & J Sports Prods., Inc. v Barretta, No. 18 CV 05111, 2019 WL 7284249, at *6 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 7283284 (E.D.N.Y. Dec. 27, 2019); J & J Sports Prods., Inc. v. La Parranda Mexicana Bar & Restaurante Co., No. 18 CV 2622, 2018 WL 6985009, at *6 (E.D.N.Y. Nov. 29, 2018), report and recommendation adopted, 2018 WL 6716095 (E.D.N.Y. Dec. 21, 2018); Crazy Willy's Bar, Lounge & Rest., Inc., 2018 WL 3742701, at *4.

3. Attorney's Fees and Costs

Section 605(e)(3)(B)(iii) of the FCA requires courts to "direct the recovery of full costs, including reasonable attorneys' fees, to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff requests thirty days from the date of entry of judgment to submit a motion for costs and attorney's fees. (Pl.'s Mem. at 10-11.) Because plaintiff is entitled to recover full costs and reasonable fees under the statute, I recommend that plaintiff be permitted to make its request in a separate motion, with supporting documentation. See Joe Hand Promotions, Inc. v. Beer Closet, Inc., No. 17 CV 3735, 2018 WL 4138938, at *6 (E.D.N.Y. July 27, 2018) (permitting plaintiff to submit separate motion for attorney's fees), report and recommendation adopted, 2018 WL 4119548 (E.D.N.Y. Aug. 29, 2018).

4. Interest

Plaintiff also seeks pre- and post-judgment interest. The Second Circuit "has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization when the awards were fair, equitable, and necessary to compensate the wronged party fully." Garden City Club, Inc. v. Rojas, No. 05 CV 1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2016) (internal quotation marks and citations omitted). However, courts in this district have generally declined to award pre-judgment interest for FCA violations. See, e.g., LX Food Grocery, 2016 WL 6905946, at *5 (citing J & J Sports Prods., Inc. v. La Ruleta, No. 11 CV 4422, 2012 WL 3764062, at *5 (E.D.N.Y. Aug. 7, 2012)). I respectfully recommend adhering to this precedent and denying plaintiff's request for pre-judgment interest.

However, plaintiff is entitled to post-judgment interest on damages from the date of entry of judgment until the date the judgment is paid in full. 28 U.S.C. § 1961(a). Post-judgment interest accrues at the federal statutory rate until the judgment is paid. Id.; see also Joe Hand Prods., Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *14 (E.D.N.Y. May 29, 2013); J & J Sports Prods., Inc. v. LDG Williams, LLC, No. 11 CV 2145, 2011 WL 5402031, at *5 (E.D.N.Y. Nov. 7, 2011).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion for default judgment against Nutty Sports Bar & Grill be granted and plaintiff's motion for default judgment against Fernando Quintana be denied and the claims against him dismissed. Additionally, I recommend that plaintiff be awarded $1,044.05 in statutory damages and $1,044.05 in enhanced damages, for a total of $2,088.10, plus post-judgment interest at the federal statutory rate until the judgment is paid in full. I further recommend that plaintiff be permitted to file a separate motion for attorney's fees and costs.

Any objections to this Report and Recommendation must be filed electronically, with courtesy copies to Judge Kovner and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d). Plaintiff is directed to serve copies of this Report and Recommendation on the defaulting defendants by regular mail, and to file proof of service with the Clerk of the Court within three days of the date of this Report and Recommendation.

Respectfully submitted,

/s/
ROBERT M. LEVY
Unites States Magistrate Judge

Dated: Brooklyn, New York
July 18, 2022